Harvey Bartle IV
**MORGAN, LEWIS & BOCKIUS LLP**
502 Carnegie Center
Princeton, NJ 08540-6241
Phone: (609) 919-6600

OF COUNSEL
Michael J. Abernathy
Margaret A. McGreal
Karon N. Fowler
**MORGAN, LEWIS & BOCKIUS LLP**
110 North Wacker Drive
Chicago, IL 60606-1511
Phone: (312) 324-1000

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| REUNION NEUROSCIENCE INC. AND REUNION NEUROSCIENCE CANADA INC., a Canadian company | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. _____ |
| v. | ) ) ) | |
| MINDSET PHARMA INC., a Canadian company, | ) ) ) | Jury trial requested |
| Defendant. | ) ) ) ) | |

## <u>COMPLAINT</u>

Plaintiffs Reunion Neuroscience Inc. and Reunion Neuroscience Canada Inc. (collectively "Reunion"), by their attorneys, allege as follows for their Complaint against Mindset Pharma Inc. ("Mindset").

## INTRODUCTION

1.      Reunion is a pioneering biotech company that has developed a novel serotonergic psychedelic compound—RE-104—for patients suffering from mental health conditions, including an initial indication for postpartum depression.  Recognizing the novelty of Reunion's RE-104, the United States Patent and Trademark Office ("PTO") issued United States Patent No. 11,292,765 ("'765 Patent") on April 5, 2022, providing Reunion with exclusive rights to that composition.

2.      Reunion brings this action because Mindset—which also develops serotonergic psychedelic drugs—knowingly copied Reunion's RE-104 compound and presented that *exact* composition to the PTO as *its* invention.

3.      In doing so, Mindset committed inequitable conduct in the PTO in two ways:  first, by misrepresenting to the Examiner that its employees invented RE-104; and second, by fraudulently omitting RE-104's actual inventor—Dr. Nathan Bryson, Reunion's Chief Scientific Officer.

4.      The law has long instructed that conception is the touchstone of inventorship, and Dr. Bryson solely conceived Reunion's RE-104 in mid-2020.

5.      To protect his proprietary intellectual property, Dr. Bryson filed provisional patent applications disclosing RE-104 on November 3, 2020 and June 30, 2021.

6.      On December 30, 2021, the PTO published Reunion's related non-provisional patent application, thereby publicly disclosing the structure of RE-104 and how to make it.

7.      And on April 5, 2022, the PTO issued the '765 Patent, which claims and publicly discloses Reunion's RE-104.

8.      Around this time, Mindset also was experimenting with psychedelic drug candidates for the treatment of psychiatric disorders and was actively monitoring Reunion's PTO filings.

9.      From February 2020 through July 2021—*before* the PTO published Reunion's RE-104 compound—Mindset filed three related patent applications for serotonergic psychedelic agents.  Tellingly, *none* disclosed RE-104 or contained any data relating to that compound.

10.     But on June 6, 2022, for the first time, Mindset added Reunion's RE-104 as claim 13 of its application for United States Patent No. 11,591,353 ("'353 Patent).  Mindset only included that compound *after* RE-104's chemical structure became public following the publications of Reunion's patent application and subsequently issued patent.

11.     The '353 Patent names Mindset employees Dr. Abdelmalik Slassi and Joseph Araujo as co-inventors.  Yet neither conceived nor developed RE-104—they had nothing to do with its invention.

12.     Mindset and the named inventors violated their duty of candor to the PTO by failing to inform the Examiner that Dr. Bryson had invented RE-104.  This misrepresentation was material, as the Examiner could not have allowed claim 13 had it known that the named inventors did not actually invent it.

13.     But not only did it patent Reunion's RE-104 compound, Mindset asserted that *Reunion* needed a license from Mindset to use that compound—even though Dr. Bryson had invented it.

14.     In late January 2023, Mindset brazenly informed Reunion that Mindset's patent rights cover RE-104 and proposed "to enter into negotiations with Reunion for a commercial resolution including licensing rights to Mindset's claims covering compound RE-104 . . . rather

than becoming involved in legal proceedings." Mindset made clear that it "fully intends" to publicly announce "its patent rights around RE-104 and to enforce its patent rights."

15.     Reunion strongly disagreed, explaining in a February 2023 letter that Dr. Bryson had independently conceived of Reunion's RE-104 compound and was erroneously omitted as the only true inventor on Mindset's patent application. Although Reunion detailed its "serious concerns" about the validity, inventorship, enforceability and ultimate ownership of the Mindset then-pending application, Reunion agreed to meet with Mindset to explore a business resolution "rather than becoming involved in legal proceedings."

16.     On February 15, 2023, Reunion and Mindset's CEOs—Greg Mayes and James Lanthier, respectively—met to discuss a licensing arrangement.

17.     During that meeting, the parties disclosed their general financial conditions, and Reunion made clear that its potential funding would be contingent on resolving Mindset's public allegations.

18.     The discussions were successful. After meeting privately, Messrs. Mayes and Lanthier announced they had reached an agreement, shaking hands in confirmation.

19.     But shortly after its counsel circulated a draft settlement license reflecting the "terms discussed during the meeting," Mindset attempted to renege on this agreement, opting instead to pursue "strategic alternatives."

20.     Accordingly, Reunion brings this action to protect its intellectual property and hold Mindset liable for the consequences of its illicit conduct. Since Dr. Bryson conceived of the compound recited in claim 13, he is the only true inventor of at least one claim of Mindset's '353 Patent. Thus, under settled law, Reunion co-owns the '353 Patent in its entirety. Mindset also should be held to its promises at the parties' settlement meeting. And for its employees'

inequitable conduct before the PTO, Mindset should be barred from enforcing the '353 Patent against Reunion.

**THE PARTIES**

21.     Reunion Neuroscience Inc. and Reunion Neuroscience Canada Inc. (collectively "Reunion") are Canadian companies with their principal place of business at 30 Duncan Street, Lower North Suite, Toronto, Ontario M5V 2C3, Canada.

22.     As part of a corporate reorganization in August 2022, Field Trip Health Ltd. was renamed Reunion Neuroscience Inc.  Earlier, Field Trip Ventures Inc., a subsidiary of Field Trip Health Ltd., became Field Trip Psychedelics Inc., which is now part of Reunion, and was subsequently renamed Reunion Neuroscience Canada Inc.[1]

23.     On information and belief, Mindset also is a Canadian corporation with its principal place of business at 217 Queen Street West, 401, Toronto, Ontario M5V 0R2, Canada.

**JURISDICTION AND VENUE**

24.     This is a civil action brought under Federal and state laws against Mindset for (i) correction of inventorship of the '353 Patent under 35 U.S.C. § 256; (ii) a declaratory judgment to correct ownership of the '353 Patent under 28 U.S.C. §§ 2201 and 2202; (iii) a declaratory judgment of inequitable conduct; (iv) breach of an oral settlement agreement; (v) promissory estoppel; and (vi) tortious interference with prospective business.

25.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

[1] References to "Reunion" include its predecessors, Field Trip Ventures Inc. and Field Trip Psychedelics Inc.

26.     This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

27.     This Court has personal jurisdiction over Mindset under Federal Rule of Civil Procedure 4(k)(2) at least because (i) certain of Reunion's claims arise under federal law; (ii) Mindset is a foreign entity; (iii) Mindset is not subject to jurisdiction in any state's courts of general jurisdiction; and (iv) exercising jurisdiction over Mindset comports with due process and would not offend traditional notions of fair play and substantial justice.

28.     Venue is proper in this District under 28 U.S.C. § 1391(c)(3) at least because Mindset is not a resident in the United States.

29.     An actual and justiciable controversy exists between Reunion and Mindset as alleged herein.

## FACTUAL BACKGROUND

30.     Mental health is a worldwide crisis affecting approximately 900 million people globally, with approximately 322 million persons suffering depression.  Unfortunately, only one in three patients adequately responds to first-line therapy.

31.     Serotonin is a neurotransmitter that is known to regulate mood, appetite, sleep, learning, memory and many other biological and physiological functions.

32.     The most frequently prescribed drugs to treat depression—selective serotonin reuptake inhibitors ("SSRIs")—work by modulating serotonin receptor concentrations in the brain. But they have many problems.

33.     For many patients, SSRIs have delayed response rates, up to three to four weeks. And for some, the response is poor.  In addition, SSRIs have many side effects, including anxiety,

nausea, indigestion, diarrhea, constipation, loss of appetite, weight loss, dizziness, blurred vision and dry mouth.  For long-term SSRI therapy, adverse effects include sexual dysfunction, weight gain and sleep disturbance.  They also require continuous dosing.

34.    Postpartum depression ("PPD") affects about 10-15% of mothers of newborns. Women suffering from PPD can experience changes in mood, appetite and sleep.  PPD patients often feel hopeless, lacking concentration, energy and self-esteem and maternal disinterest.

35.    The only approved pharmaceutical treatment in the United States specifically for PPD is brenaxolone (Zulresso®), which requires a 60-hour inpatient infusion, resulting in three days away from the patient's baby and family.

36.    SSRIs are frequently prescribed off-label for PPD, but they can take three to four weeks to take effect, have significant side effects and are not effective for many patients.

37.    Psychedelics are one of the oldest forms of psychopharmaceutical treatments and have been used to alter perception and mood and affect cognition for thousands of years.  Recently, the use of psychedelics to treat anxiety and depressive disorders has been on the rise due to the limited efficacy of existing pharmacological treatments for these disorders.  Unlike the existing treatments, recent innovative psychedelics have exhibited rapid and sustained clinical benefits, potentially from just one dose.

38.    Although sometimes perceived as dangerous, psychedelics are among the safest classes of drugs.  They are considered physiologically safe, do not cause addiction and have not been associated with overdose deaths.

**Reunion's RE-104 Compound**

39.    A leader in novel psychedelic drug development, Reunion focuses on developing proprietary drug candidates designed to engage serotonergic receptors in the brain to treat a variety

of psychiatric conditions, including depression.  Reunion is pioneering the advancement of innovative synthetic molecules targeting serotonin receptors.

40.     Reunion set out to develop a potentially fast-acting, short duration treatment with durable efficacy that provides lasting benefits to underserved patients suffering from depression.

41.     To that end, Reunion developed RE-104, a serotonergic psychedelic therapy that directly agonizes the serotonin receptor.  RE-104 rapidly produces a psychedelic experience, has few metabolites, and is quickly eliminated.  Its prodrug design also improves solubility, stability, and bioavailability.

42.     In a recent Phase 1 trial, RE-104 was shown to be safe and well tolerated, with no serious or severe adverse events.  The interim analysis included 32 healthy volunteers across four ascending dose cohorts, with two of the eight subjects in each cohort receiving placebo.  RE-104 showed robust and pervasive pharmacodynamic effects with a shorter duration of psychedelic experience compared to published data with psilocybin (approximately three to four hours for RE-104 versus six to eight hours for psilocybin).

43.     Reunion plans to start a Phase 2 trial in PPD patients and conduct other population pharmacokinetics ("PK") and lacteal transfer sub-studies this year, with a Phase 3 study to follow. Clinical trials for other mental health conditions are planned.

44.     RE-104's chemical structure is depicted as follows:

**Reunion's '765 Patent**

45.     Dr. Bryson conceived of RE-104 no later than July 2020.

46.     To secure its proprietary RE-104 compound, Reunion filed for patent protection.

47.     On November 3, 2020, Reunion filed US Provisional Patent Application No. PR 63/109,095 for Tryptamine Prodrugs, identifying Dr. Nathan Bryson as the Inventor.

48.     Claim 2 of the provisional application filed on November 3, 2020, discloses Reunion's RE-104 compound:

Hemiglutarate of 4-hydroxy-diisopropyltryptamine



49.     The November 3, 2020 patent application further discloses the synthesis of RE-104 (Examples 6 and 9), various properties of RE-104 such as its rate of hydrolysis in animal serums (Example 11), validity of design through demonstrated PK properties in an animal model (Example 12), and possible formulations of RE-104 (Example 18).  The patent application also discusses how RE-104 could be used in humans (Examples 13-17).

50.     Thereafter, on June 30, 2021, Reunion filed Non-provisional Patent Application No. 17/364,047 ("'047 Application") for Tryptamin Prodrugs, identifying Dr. Bryson as the First

Named Inventor and claiming priority to its earlier Provisional Application No. 63/109,095 filed on November 3, 2020.

51.     Both Example 6 and claim 2 of the '047 Application also disclose the proprietary RE-104 compound:



52.     On December 30, 2021, the PTO published Reunion's application US 2021-040325, including the structural depictions of RE-104, thereby disclosing it to the public, including Mindset.

53.     On January 20, 2022, the PTO communicated a Notice of Allowance and Fees Due, indicating the allowed claims and subject matter, followed on February 9, 2022 by an Issue Notification, setting an issue date of March 1, 2022.  Shortly thereafter, Mindset provided Reunion with copies of certain published Mindset patent applications.  Even though Reunion had already submitted to the PTO a related Mindset published patent application, Reunion petitioned the PTO to pull its application from issue and submitted the additional references.  In response, on February 24, 2022, the PTO communicated a renewed Notice of Allowance and Fees Due, followed on March 16, 2022, by a renewed Issue Notification setting an issue date of April 5, 2022.

54.     On April 5, 2022, the PTO issued the '765 Patent, naming Dr. Nathan Bryson as the inventor and Field Trip Psychedelics Inc. (now Reunion) as the Assignee.  A copy of the '765 Patent is attached as Exhibit A.

55.     Compound 6 and claim 2 of Reunion's '765 Patent publicly disclose the structure of RE-104:[2]



N,N diisopropyltryptamine-4-glutarate

56.     In addition, Reunion's '765 Patent describes data relating to the synthesis and utility of RE-104.  For instance, Examples 6 and 9 describe the synthesis of RE-104 and its hydrochloric acid salt; Example 12, Table 1, describes the rate of RE-104 hydrolysis in serum; Example 13; Tables 2 and 3; and Figures 1 and 2 describe RE-104's PK parameters in rats, while other Examples describe how RE-104 could be used in humans.

---

[2] A skilled artisan would understand that this two-dimensional representation—which depicts RE-104's left-hand side chain rotated about a particular carbon-oxygen single bond—discloses the same chemical structure as those previously shown.

**Mindset's '353 Patent**

57.     On February 4, 2020, Mindset filed US Provisional Patent Application No. PR 62/969,934, which did not include Reunion's RE-104 compound.

58.     One year later, on February 4, 2021, Mindset filed PCT Application No PCT/CA2021/050125, which also did not include Reunion's RE-104 compound.  Instead, Mindset disclosed in the PCT Application compounds such as I-18, I-19, and I-20:

| | |
|---|---|
| I-18 |  |
| I-19 |  |
| I-20 |  |

59.     None of these disclosed compounds has a glutaric acid derived side chain on the



left-hand side of the molecule, i.e., a side chain with five carbon atoms:                    ; rather, each has a side chain with only four carbon atoms.  Furthermore, none of these compounds

discloses a diisopropyl substituted amine moiety, i.e., ; rather, each discloses a

deuterated dimethyl amine moiety:  .

60.     On July 28, 2021, Mindset filed US Patent Application No. 17/387,883, which

likewise did not include Reunion's RE-104 compound.   Mindset similarly disclosed in that

application compounds I-18, I-19, and I-20 (pp. 52-53):

61.     But, on June 6, 2022, over six months after the PTO first publicly disclosed Reunion's RE-104 compound on December 30, 2021, Mindset filed US Patent Application No. 17/833,341(CON), which included Reunion's RE-104 compound for the first time.

62.     Claim 13 of Mindset's application depicts for the first time Reunion's patented RE-104 that Dr. Bryson had independently conceived years earlier:

13.     The compound of claim 1 that is:



or a pharmaceutically acceptable salt or solvate thereof.

63.     The timing of Mindset's inclusion of the RE-104 compound makes clear that the named inventors of US Patent Application No. 17/833,341 did not conceive that compound. Instead, Mindset only included Reunion's RE-104 compound structure in its patent application *after* the publication of Reunion's application and the issuance of its patent, both of which disclose RE-104.

64.     The following timeline confirms this conclusion:



65.    Mindset failed to inform the PTO that Dr. Bryson had solely conceived of RE-104 that it included in claim 13 of its patent application.

66.    To the contrary, the named inventors of the '353 Patent, Dr. Abdelmalik Slassi and Joseph Araujo, both signed declarations affirming each was the "original inventor or an original joint inventor of the claimed invention in the application."

67.    As the named inventors on the '353 Patent, Dr. Slassi and Mr. Araujo owed a duty of candor to the PTO during the prosecution of that patent under 35 C.F.R. § 1.56.  On information and belief, both Dr. Slassi and Mr. Araujo made materially misleading statements regarding inventorship with the intent to deceive the PTO to allow claims during prosecution of the '353 Patent.

68.    Mindset's '353 Patent issued on February 28, 2023, naming Dr. Slassi and Mr. Araujo as its only inventors and including claim 13 that discloses Reunion's patented RE-104 compound.  The ' 353 Patent is attached as Exhibit B.

69.     A side-by-side comparison shows that the compound in claim 13 of Mindset's '353 Patent is structurally identical to that disclosed in claim 2 of Reunion's '765 Patent:

| Claim 2 of the '765 Patent | Claim 13 of the '353 Patent |
| --- | --- |
|  |  |

70.     As these figures show, both patents disclose a glutaric acid derived side chain on the left-hand side of the molecule, i.e., a side chain with five carbon atoms, and a diisopropyl substituted amine moiety.   The two-dimensional graphical representations describe the same chemical structure—Reunion's RE-104 compound.

71.     On information and belief, Mindset and the named inventors knowingly and deliberately failed to disclose to the PTO that Dr. Bryson had solely conceived of the invention in claim 13 of Mindset's '353 Patent.   On information and belief, the named inventors' failure to disclose Dr. Bryson's inventorship was knowingly false and intended to deceive the PTO so that Mindset could improperly secure the claim.

72.     The misrepresentations about inventorship also were material to the Examiner's decision to issue the '353 Patent.   But for Mindset's knowing and deliberate misrepresentations regarding conception and inventorship, claim 13 of the '353 Patent would not have issued.

73.     Indeed, Mindset allowed the '353 Patent to issue without correcting inventorship even though, as discussed below, (i) Reunion's outside counsel had informed Mindset's counsel in writing about Dr. Bryson's conception of RE-104, and (ii) the parties' CEOs discussed this issue during their February 15, 2023 settlement meeting.

### Mindset's Demand Letter

74.     On January 20, 2023, outside counsel for Mindset wrote to Joseph Del Moral, Founder and Chairman of Reunion, regarding "Mindset's patent rights covering Reunion's RE-104 compound."  Mindset's counsel stated that Mindset's patent publications "contain claims that cover Reunion's RE-104 compound."

75.     Mindset's counsel also informed Reunion that the PTO had issued a Notice of Allowance for its patent application, including "claims 1-10 and 13-15 that cover the RE-104 compound" and that "we expect the patent to issue shortly."

76.     Mindset's counsel proposed "to enter into negotiations with Reunion for a commercial resolution including licensing rights to Mindset's claims covering compound RE-104."  He also requested Reunion to "carefully review this information and agree to discuss a commercial resolution to this matter rather than becoming involved in legal proceedings."

77.     Mindset's counsel cautioned Reunion that "it would appear that Reunion must divulge that Mindset has patent rights covering RE-104 during due diligence investigations and fund-raising discussions."

78.     Finally, Mindset's counsel concluded that Mindset "fully intends to take all necessary steps to expand on this morning's public disclosure to specify its patent rights around RE-104 and to enforce its patent rights."

79.     Tellingly, Mindset's counsel did not assert that the named inventors of the '353 Patent had conceived or independently developed the compound disclosed in claim 13.

80.     On February 13, 2023, counsel for Reunion responded to Mindset's demand letter, explaining that although it was amenable to exploring a commercial resolution, it had serious concerns about the validity, inventorship, enforceability and ultimate ownership of the Mindset application.  Reunion detailed those concerns in its response.

**The Parties' February 15, 2023 Settlement Agreement**

81.     On February 15, 2023, the parties met in person at counsel for Mindset's offices in Washington, D.C. to attempt to resolve Mindset's allegations.  Outside counsel for Mindset participated, along with Mindset's Chief Executive Officer, James Lanthier, and other Mindset executives.  Outside counsel for Reunion also participated, along with Reunion's President and Chief Executive Officer, Greg Mayes, and its General Counsel.

82.     During that meeting, Reunion made clear that it needed to resolve any intellectual property issues by the end of February 2023 to secure third-party funding that it was negotiating.

83.     The parties met for about three hours, exploring potential various commercial arrangements, including Reunion potentially licensing the '353 Patent.

84.     Towards the end of the meeting, Mindset's CEO, Mr. Lanthier, and Reunion's CEO, Mr. Mayes, had a private conversation.  Afterwards, Messrs. Lanthier and Mayes announced that they had reached an agreement, shaking hands to confirm the deal.

85.     The parties reached a meeting of the minds as to all the material terms of a non-exclusive license between Mindset and Reunion for the '353 Patent.

86.     In particular, the parties orally agreed on the timing, form and amount of upfront payments, milestone payments, and royalties, and the disposition of claim 13.

87.     Within five days of the settlement meeting, outside counsel for Mindset circulated a proposed license agreement between Mindset and Reunion "in accordance with the terms discussed."  He also thanked Reunion's counsel for the "productive meeting."

88.     On March 2, 2023, Mindset informed Reunion that it intended to walk away from its oral settlement license with Reunion because it wanted to pursue "strategic alternatives."

89.     As Mindset predicted in its initial assertion letter, Reunion has had to divulge Mindset's allegations during its fund-raising and related due diligence efforts.  Because Mindset has backed out of its oral agreement, Reunion must continue to disclose that its dispute with Mindset remains unresolved.

90.     Reunion's opportunity to pursue clinical trials of RE-104 will be impaired due to Mindset's actions.

91.     If left unanswered, Mindset's assertion that Reunion must have a license for RE-104 would irreparably harm Reunion in the near and long term.

## COUNT I

### (Correction of Inventorship of Claim 13 Under 35 U.S.C. § 256)

92.     Reunion realleges and incorporates by reference the allegations contained in paragraphs 1-91.

93.     The '353 Patent names Dr. Abdelmalik Slassi and Joseph Araujo as the only inventors of the subject matter claimed in the '353 Patent.

94.     By conceiving the RE-104 compound disclosed in claim 13 of the '353 Patent, however, Dr. Nathan Bryson is the *sole* inventor of the claim.

95.     The named inventors did not conceive of the invention in claim 13 of the '353 Patent.  Thus, Dr. Bryson should be completely substituted as the inventor of that claim.

96.     Dr. Bryson has assigned his rights, title, and interest in the invention to Reunion. Thus, Reunion has standing to request correction of inventorship.

97.     Omitting Dr. Bryson from the '353 Patent has injured and will continue to injure Reunion by depriving it of an ownership interest, control and financial stake in the '353 Patent.

98.     Dr. Bryson has received notice of and consented to this action to correct inventorship.

99.     Under 35 U.S.C. § 256, the '353 Patent should be corrected to reflect that Dr. Bryson is the sole inventor of the subject matter of claim 13, and he should be completely substituted as the sole inventor of that claim.

100.    Reunion is entitled to an order from this Court declaring Dr. Bryson as *the sole* inventor of claim 13 of the '353 Patent and ordering the Director of the PTO to issue a certificate of correction to that effect.

## COUNT II

### (Declaratory Judgment of Ownership Interest in the '353 Patent)

101.    Reunion realleges and incorporates by reference the allegations contained in paragraphs 1-100.

102.    Reunion seeks a declaratory judgment that it has an ownership interest in the '353 Patent.

103.    A substantial and continuing justiciable controversy exists between Reunion and Mindset as to Reunion's ownership interest in the '353 Patent.

104.    A valid case and controversy exist sufficient for this Court to declare the parties' rights and remedies because the parties dispute ownership of the inventions disclosed and claimed in the '353 Patent.

105. This controversy is ripe for determination because the parties dispute ownership of the inventions disclosed and claimed in the '353 Patent.

106. Dr. Bryson conceived of the invention recited in claim 13 of the '353 Patent.

107. Dr. Bryson has assigned his rights, title, and interest in the invention to Reunion. Thus, Reunion has standing to request this declaration.

108. Reunion has an ownership interest in the '353 Patent by virtue of Dr. Bryson having assigned his rights, title, and interest in the invention to Reunion.

109. Because Dr. Bryson is an inventor of claim 13 of the '353 Patent and assigned his rights to Reunion, the named inventors could not assign complete ownership in the '353 patent to Mindset.

110. To redress this controversy, Reunion requests that the Court declare that Reunion is a co-owner of the '353 Patent.

## COUNT III

### (Declaratory Judgement of Inequitable Conduct)

111. Reunion realleges and incorporates by reference the allegations contained in paragraphs 1-110.

112. Mindset purports to be the lawful owner of all right, title and interest in the '353 Patent.

113. Inventorship is material to patentability. On information and belief, the named inventors knew or should have known that their omission of Dr. Bryson as the inventor of claim 13 was intentional, false and misleading, and they purposefully withheld that material information from the Examiner during the prosecution of the '353 Patent.

114.    The Examiner relied on the named inventors' misrepresentation or omission regarding inventorship in allowing the claims of the '353 Patent.  Specifically, under 35 U.S.C. § 101, patents may not be issued to those who are not true inventors.  *See, e.g.*, M.P.E.P. § 2104 (II) (instructing examiners to "reject the claims under 35 U.S.C. 101" where inventorship is not correct).

115.    The named inventors' deceptive intent in committing inequitable conduct before the PTO during the prosecution of the '353 Patent is the single most reasonable inference draw from the facts alleged herein.  For example, but for the named inventors' misrepresentation or omission regarding inventorship, the '353 Patent would not have issued.  Mindset has been able to improperly demand a license from Reunion by virtue of the '353 Patent's improper issuance.

116.    Given the failure to include Dr. Bryson as the inventor of claim 13 with deceptive intent, the '353 Patent is legally unenforceable against Reunion due to the named inventors' inequitable conduct.

117.    Mindset's conduct renders this case exceptional under 35 U.S.C. § 285.

118.    An actual and justiciable controversy exists between Reunion and Mindset regarding the '353 Patent—including its unenforceability.

119.    Reunion is entitled to a declaratory judgment that the '353 Patent is legally unenforceable.

## COUNT IV

### (Breach of Oral Settlement Agreement)

120.    Reunion realleges and incorporates by reference the allegations contained in paragraphs 1-119.

121.     On February 15, 2023, Reunion's President and Chief Executive Officer, Greg Mayes, and Mindset's Chief Executive Officer, James Lanthier, met in Washington, DC at the offices of Mindset's outside counsel "to discuss a commercial resolution to this matter rather than becoming involved in legal proceedings."

122.     At that meeting, for valuable consideration including a sum certain to be paid by Reunion, Reunion and Mindset entered into an oral non-exclusive license agreement to settle Mindset's allegations regarding the '353 Patent.

123.     Both Reunion's and Mindset's CEOs agreed to the essential terms of the oral license settlement agreement.

124.     The parties had a meeting of the minds of all the material terms of the oral license settlement agreement for the '353 Patent, including the timing, form and amount of upfront payments, milestone payments, and royalties, and the disposition of claim 13.

125.     On March 2, 2023, Mindset informed Reunion that it was walking away from the oral license settlement agreement to pursue "strategic alternatives," thereby refusing to perform its obligations under the agreement and thus breaching it.

126.     As a result of Mindset's breach, Reunion has been damaged.

## COUNT V

### (Promissory Estoppel)

127.     Reunion realleges and incorporates by reference the allegations contained in paragraphs 1-126.

128.     On February 15, 2023, Reunion's President and Chief Executive Officer, Greg Mayes, and Mindset's Chief Executive Officer, James Lanthier, met in Washington, DC at the offices of Mindset's outside counsel "to discuss a commercial resolution to this matter rather than becoming involved in legal proceedings."

129.    During that meeting, Reunion expressly stated that it needed to resolve any intellectual property issues by the end of February 2023 to secure third-party funding that it was negotiating.

130.    Mindset made clear and definite promises to Reunion that Mindset would enter into a non-exclusive licensing agreement with Reunion to resolve the dispute.  Mindset made clear and definite promises to Reunion regarding the licensing agreement, timing, form and amount of upfront payments, milestone payments, and royalties, and the disposition of claim 13.

131.    Mindset's clear and definite promises to Reunion were made with the expectation that those promises would induce reliance by Reunion and specifically Reunion would report to its potential investors that the parties had resolved their differences.

132.    After the February 15, 2023 settlement, Reunion reasonably relied on Mindset's promises in initially deciding to forego litigation to resolve the patent inventorship and ownership issues that it had raised with Mindset before the parties' settlement meeting.  Mindset's subsequent conduct alleged above forced Reunion to bring this action to resolve the parties' dispute.

133.    Reunion relied on Mindset's promises to its definite and substantial detriment in the form of significant economic damages.

<u>COUNT VI</u>

**(Tortious Interference with Prospective Business)**

134.    Reunion realleges and incorporates by reference the allegations contained in paragraphs 1-133.

135.    Reunion has a protectable interest in the reasonable expectation of economic advantage, including opportunities to secure funding for its ongoing clinical development.

136.    Mindset knew of this expectancy because Reunion communicated it to Mindset during their settlement negotiations.  It also made clear that resolution of Mindset's allegations was critical to Reunion's ability to secure that funding.

137.    In its January 20, 2023 Demand Letter, Mindset acknowledged it intended to publicly disclose its allegations against Reunion and asserted that Reunion would have to divulge those allegations during due diligence investigations and fund-raising discussions.

138.    After admittedly injecting its allegations into the market publicly, Mindset tortiously interfered with Reunion's prospective economic advantage by refusing to license the '353 Patent to Reunion despite its promise to do so.

139.    Mindset did so with malice and without justification or excuse.  For example, on information and belief, Mindset knew or should have known that refusing to license the '353 Patent after expressly promising to do so would affect Reunion's opportunity to obtain funding.  Thus, on information and belief, Mindset committed these acts knowing they would impair Reunion's opportunity to obtain funding.

140.    As a result of Mindset's conduct as alleged herein, there is a reasonable likelihood that Reunion's opportunity to prospectively obtain funding will be impaired.  In addition, there is a reasonable probability that Reunion would have obtained the anticipated economic benefit in the absence of Mindset's interference at least because resolution of Mindset's allegations was critical to Reunion's ability to secure funding.

141.    Mindset's tortious interference has damaged Reunion.

142.    Based on information and belief, Mindset's conduct as alleged herein was willful and wanton because Mindset deliberately interfered with Reunion's prospective economic advantage knowing that it would likely harm Reunion.

## **PRAYER FOR RELIEF**

WHEREFORE, Reunion respectfully requests that this Court enter judgment in favor of Reunion granting the following relief:

A.     A judgment in favor of Reunion and against Mindset correcting inventorship of the '353 Patent and ordering the Director of the PTO to issue a certificate of correction to that effect.

B.     A declaratory judgment in favor of Reunion and against Mindset that Reunion co-owns the '353 Patent and the inventions disclosed and claimed in it.

C.     A declaratory judgment in favor of Reunion and against Mindset that the '353 Patent is legally unenforceable due to Mindset's inequitable conduct.

D.     A judgment that this is an exceptional case under 35. U.S.C. § 285 and an award of Reunion's reasonable attorneys' fees.

E.     A judgment that Mindset breached its February 15, 2023 oral license settlement agreement with Reunion and an award of damages to compensate Reunion for that breach.

F.     In the alternative, a judgment that Mindset is estopped from refusing to license the '353 Patent to Reunion as promised during the February 15, 2023 settlement meeting.

G.     A judgment that Mindset tortiously interfered with Reunion's prospective economic advantage and an award of damages of more than $25 million for that conduct.

H.     An award of punitive damages resulting from Mindset's willful and wanton actions.

I.     Such other and further relief as this Court may deem just and proper, in law or equity.


 Date: March 13, 2023                    Respectfully submitted,

                                        By:  */s/ Harvey Bartle IV*
                                        Harvey Bartle IV

**MORGAN, LEWIS & BOCKIUS LLP**
502 Carnegie Center
Princeton, NJ 08540-6241
Phone: (609) 919-6600

Michael J. Abernathy (*pro hac vice* forthcoming)
mike.abernathy@morganlewis.com
Margaret A. McGreal (*pro hac vice* forthcoming)
margaret.mcgreal@morganlewis.com
Karon N. Fowler (*pro hac vice* forthcoming)
karon.fowler@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
110 N. Wacker Drive
Chicago, IL 60606
+1.312.324.1000

*Attorneys for Plaintiffs*